IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-01345-PAB-MJW

WALTER HUERY,

Plaintiff,

v.

MS. POPE, C.D.O.C.,
DR. PAULA FRANTZ, CMO, PHP, C.D.O.C.,
NURSE; RONDA KATZENMEYER, PHP-CHP, B.V.C.F.,
LAURENCE, THEODORE L. PHP, C.D.O.C. B.V.C.F.,
JOHN DOE, 1-10 PHP, CHP, and
JANE DOE, 1-10 PHP, CHP,

Defendants.

---

**RECOMMENDATION ON
DEFENDANTS' MOTION TO DISMISS (Docket No. 29)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

This case is before the undersigned pursuant to an Order of Reference to United

States Magistrate Judge issued by District Judge Philip A. Brimmer on December 2,

2010.  (Docket No. 19).

The operative pleading is the Amended Prisoner Complaint (Docket No. 15),

which is brought pursuant to 42 U.S.C. § 1983.  The pro se incarcerated plaintiff asserts

the following in that pleading.  Since 1987 the Colorado Department of Corrections

("CDOC") has known about the plaintiff's sickle cell trait and that as a result of that trait,

he cannot be housed over 8,000 feet above sea level.  From his medical records, all of

the defendants have known about his medical status, yet they failed to take corrective

action to prevent him from further harm when he was transferred in July 2008 to Buena Vista Correctional Facility ("BVCF"), which is at 7,954 feet.   When plaintiff was at the Central Transportation Unit awaiting such transfer, he told the transportation sergeant that he could not go to BVCF because the altitude was too high for his medical status. Plaintiff's transfer was thus delayed a few days until defendant Pope got in touch with the sergeant and told him to go ahead and send plaintiff to BVCF, and if plaintiff experienced any complications, he would be moved to another facility.

On plaintiff's first day at BVCF, defendant Katzenmeyer told plaintiff he would adjust to the altitude after being up there awhile.  All plaintiff did, however, was stay in his cell 18 hours a day and vomit, but he was told all of his vital signs were all right.  For seven and one-half months, plaintiff complained of vomiting, stomach pain, and leg and arm symptoms, but no blood tests were ordered to monitor his illness, and his pleas for medical care and that they consider his altitude issues were not addressed.  Finally, on February 2, 2009, plaintiff just happened to see Dr. Fisher, a hematologist, who had plaintiff moved to a lower-altitude facility.  By that time, however, some of the plaintiff's red blood cells stopped carrying oxygen and started to sickle.  In addition, plaintiff has signs that his kidneys are failing.  Also, due to the lack of action, plaintiff suffered unnecessary pain and suffering and mental and physical anguish.

Plaintiff raises five claims of Eighth Amendment violations based upon deliberate indifference to his health and well being.  In Claim One, plaintiff references defendant Pope's directing the transportation sergeant to go ahead and send plaintiff to BVCF despite plaintiff's medical status.  In Claim Two, plaintiff alleges defendant Paula Frantz was deliberately indifferent "[b]y allowing the medical staff and the administration staff at

C.D.O.C. in Colorado Spring, CO as well as the Central Transportation Unit (CTU) and it's [sic] medical staff, to send me, to a facility that they know would be detrimental and dangerous to my physical and mental health." (Docket No. 15 at 9).  In Claim Three, plaintiff raises a deliberate indifference claim against defendant Katzenmeyer, head nurse, who allegedly saw plaintiff upon his arrival at BVCF at which time plaintiff was light headed, feeling dizzy, and sick to his stomach.  Plaintiff told her that he had sickle cell trait and was not to be that high in altitude, but Katzenmeyer told plaintiff that he only had the sickle trait.  For the next seven and one-half months, Katzenmeyer and her staff did not acknowledge or correct plaintiff's medical condition.  In Claim Four, plaintiff alleges that he saw defendant Laurence on August 28, 2008, who told plaintiff that plaintiff had a lot of medical issues, that plaintiff had already been seen for his sickle trait issue, that he was not going to discuss anything about it that day, and that plaintiff had to select another one of his medical issues.  Laurence allegedly showed deliberate indifference to plaintiff's serious medical needs as soon as he told plaintiff he was not going to discuss plaintiff's life-threatening medical care and did not take corrective action to prevent future harm.  In Claim Five, plaintiff claims that defendant Pope did not do proper screening when plaintiff arrived at BVCF because she should have seen in his medical record that he had been removed from Park County Jail  because the altitude of 10,000 feet was too high for his sickle cell issue.  Plaintiff seeks punitive and compensatory damages plus costs.

Now before the court for a report and recommendation is the defendants' motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) (Docket No. 29). Defendants seek dismissal on the following grounds: (1) they are immune from liability

for damages in their official capacities; (2) plaintiff fails to allege that defendant Dr.

Frantz personally participated in the alleged constitutional violation; (3) plaintiff fails to

state any Eighth Amendment Claims; and (4) defendants are entitled to qualified

immunity in their individual capacities.  Plaintiff filed a "rebutal" [sic] (response) to the

defendants' motion.  (Docket No. 31).  The court has carefully considered the motion

(Docket No. 29) and the response thereto (Docket No. 31) as well as the court's file and

applicable Federal Rules of Civil Procedure and case law.  The court now being fully

informed makes the following findings, conclusions of law, and recommendation.

       For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must

accept all well-pled factual allegations in the complaint as true and resolve all

reasonable inferences in the plaintiff's favor.  Morse v. Regents of the Univ. of Colo.,

154 F.3d 1124, 1126-27 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32

(10th Cir. 1996).  A motion to dismiss pursuant to Rule 12(b)(6) alleges that the

complaint fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P.

12(b)(6).  "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does

not plead 'enough facts to state a claim to relief that is plausible on its face.'"  Cutter v.

RailAmerica, Inc., 2008 WL 163016, at *2 (D. Colo. Jan. 15, 2008) (quoting Bell Atlantic

Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).  "While a

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'

requires more than labels and conclusions, and a formulaic recitation of the elements of

a cause of action will not do . . . ."  Bell Atlantic Corp., 550 U.S. at 555 (citations

omitted).  "Factual allegations must be enough to raise a right to relief above the

speculative level." Id.  "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . .  Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Bell Atlantic Corp., 127 S. Ct. at 1974).

Plaintiff is proceeding *pro se.*  The court, therefore, reviews plaintiff's pleadings and other papers liberally and holds them to a less stringent standard than those drafted by attorneys.  Trackwell v. United States Government, 472 F.3d 1242, 1243 (10th Cir. 2007).  See Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint to less stringent standards than formal pleadings drafted by lawyers). However, a *pro se* litigant's conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based.  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  A court may not assume that a plaintiff can prove facts that have not been alleged or that a defendant has violated laws in ways that a plaintiff has not alleged.  See Associated Gen. Contractors of Cal., Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983); Whitney v. New Mexico, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf); Drake v. City of Fort Collins, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

6

## OFFICIAL CAPACITY

Defendants first assert that they are immune from liability for damages in their official capacities.  The Amended Complaint does not indicate whether the defendants are being sued in their official and/or individual capacities.  It is well established that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983," Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989), and that "the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state." Hunt v. Bennett, 17 F.3d 1263, 1267 (10th Cir. 1994).  Therefore, to the extent that the plaintiff's § 1983 claims against the defendants are against the defendants in their official capacities for monetary damages, such relief is barred by the Eleventh Amendment, and any such claim should be dismissed with prejudice.

## PERSONAL INVOLVEMENT

Next, defendants assert that the plaintiff fails to allege defendant Dr. Frantz personally participated in the alleged constitutional violation.

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948 (2009).  As the Tenth Circuit has stated:

> Under § 1983, government officials are not vicariously liable for the misconduct of their subordinates.  "[T]here is no concept of strict

supervisor liability under § 1983." . . .  "This does not mean that a
supervisor may not be liable for injuries caused by the conduct of one of
his subordinates.  It does mean that his liability is not vicarious, that is,
without fault on his part." . . . .

Supervisors are only liable under § 1983 for their own culpable
involvement in the violation of a person's constitutional rights.  To
establish supervisor liability under § 1983, "it is not enough for a plaintiff
merely to show a defendant was in charge of other state actors who
actually committed the violation.  Instead, . . . the plaintiff must establish 'a
deliberate, intentional act by the supervisor to violate constitutional rights.'"
. . .  In short, the supervisor must be personally "involved in the
constitutional violation," and a "sufficient causal connection" must exist
between the supervisor and the constitutional violation." . . . .

In order to establish a § 1983 claim against a supervisor for the
unconstitutional acts of his subordinates, a plaintiff must first show the
supervisor's subordinates violated the constitution.  Then, a plaintiff must
show an "affirmative link" between the supervisor and the violation,
namely the active participation or acquiescence of the supervisor in the
constitutional violation by the subordinates. . . .  In this context, the
supervisor's state of mind is a critical bridge between the conduct of a
subordinate and his own behavior.  Because "mere negligence" is not
enough to hold a supervisor liable under § 1983, a plaintiff must establish
that the supervisor acted knowingly or with "deliberate indifference" that a
constitutional violation would occur. . . .

Serna v. Colorado Dept. of Corrections, 455 F.3d 1146, 1151-52 (10th Cir. 2006)

(citations omitted).

Here, defendants correctly note that in Claim Two, plaintiff merely asserts that

Dr. Frantz (the CDOC Chief Medical Officer) allowed plaintiff to be transferred to a high

elevation with his medical condition.  (Docket No. 15 at 9).  This court agrees with

defendants that this is a generalized, conclusory allegation that does not show the

requisite affirmative link between Dr. Frantz and the alleged Eighth Amendment

violation.  Even under the liberal pleading standards applied to pro se litigants,

"conclusory allegations without supporting factual averments are insufficient to state a

claim upon which relief can be based." Hall v. Bellmon, 935 F.2d at 1110.  This court

finds that the plaintiff has not plead "enough facts to state a claim to relief [as against

Dr. Frantz] that is plausible on its face," so as to withstand a motion to dismiss pursuant

to Rule 12(b)(6).   Bell Atlantic Corp. v. Twombly, 127 S. Ct. at 1974.  Therefore, it is

recommended that the claim against defendant Frantz be dismissed.

## EIGHTH AMENDMENT CLAIMS

Defendants next assert that the plaintiff fails to state any Eighth Amendment

claims.   In order to state an Eighth Amendment claim, "'a prisoner must allege acts or

omissions sufficiently harmful to evidence deliberate indifference to serious medical

needs.'"  Self v. Crum, 439 F.3d 1227, 1230 (10th Cir.) (quoting Estelle v. Gamble, 429

U.S. 97, 106 (1976)), cert. denied, 549 U.S. 856 (2006).  "A prison official's deliberate

indifference to an inmate's serious medical needs is a violation of the Eighth

Amendment's prohibition against cruel and unusual punishment. . . .  The test for

constitutional liability of prison officials 'involves both an objective and a subjective

component.'"  Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005).  As the Tenth Circuit has

explained:

> to properly set forth an Eighth Amendment claim on which relief may be
> granted, [the prisoner] must set forth facts demonstrating [1] that
> his alleged medical need . . . was sufficiently serious to meet the objective
> element of the deliberate indifference test, and [2] that the Defendants'
> delay in meeting that need caused him substantial harm.  Finally, to meet
> the subjective element of the deliberate indifference test, [the prisoner]
> must allege facts supporting an inference [3] that Defendants knew about
> and disregarded a substantial risk of harm to his health or safety.

Oxendine v. Kaplan, 241 F.3d 1272, 1276-77 (10th Cir. 2001) (quotations omitted).

Here, defendants first contend that the plaintiff fails to allege a sufficiently serious

medical need.  "A medical need is serious if it has been diagnosed by a doctor or is one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Riddle v. Mondragon, 83 F.3d 1197, 1202 (10th Cir. 1996) (citation and internal quotation omitted).  Defendants assert that according to the Amended Complaint and the documents attached thereto, plaintiff suffers from sickle cell *trait* (as opposed to sickle cell anemia), sickle cell trait is not normally regarded as a disease state, and the majority of people with sickle cell trait are asymptomatic.  Defendants note that according to his intake examination on July 11, 2008, plaintiff complained of being dizzy, but his examination was normal (Docket No. 15 at 16).  Defendants assert that plaintiff does not state that he suffered from an actual disease that had been diagnosed as mandating treatment or would have been obvious to a lay person when he was transferred to BVCF in July 2008.  In addition, they contend that plaintiff fails to allege that he suffered from a diagnosed or obvious kidney condition at the time he was transferred to BVCF.  Next, defendants contend that the plaintiff fails to allege they consciously disregarded a substantial risk of serious harm.

This court finds, however, that the plaintiff has adequately plead enough facts to state an Eighth Amendment claim to relief that is plausible on its face.  While defendants state that sickle cell trait *normally* is not regarded as a disease state and that the *majority* (not all) of people are asymptomatic, plaintiff has plead enough facts that he told the defendants that he was medically advised not to be at a high altitude and that when he was housed at a high altitude, he suffered specified effects, yet the defendants did nothing to correct the situation.  This court finds that the plaintiff has adequately stated a claim against defendants Pope, Katzenmeyer, and Laurence so as

10

to withstand their motion to dismiss.

## QUALIFIED IMMUNITY

Finally, defendants assert that they are entitled to qualified immunity in their individual capacities.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 815 (2009).  It "balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  Id.  "Qualified immunity shields an officer from suit when [he] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he] confronted."  Brosseau v. Haugen, 543 U.S. 194, 198 (2004).  "Because the focus is on whether the officer had fair notice that [his] conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.  If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation."  Id.

When a defendant raises a qualified immunity defense, the plaintiff "bears the burden of showing that: (1) the defendants' actions violated a constitutional or statutory right; and (2) the right was clearly established and reasonable persons in the defendants' position would have known their conduct violated that right."  Cruz v. City of Laramie, Wyo., 239 F.3d 1183, 1187 (10th Cir. 2001).  The Supreme

Court has held that the federal courts have discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." <u>Pearson v. Callahan</u>, 129 S. Ct. at 815-16.

"Requiring the law to be clearly established provides defendants with 'fair warning' that their conduct is unconstitutional." <u>Mimics, Inc. v. Village of Angel Fire</u>, 394 F.3d 836, 841 (10th Cir. 2005). "The law is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as plaintiff maintains." <u>Id.</u> (quotations omitted). To be clearly established:

> [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

<u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987) (citation omitted). "Thus, qualified immunity leaves ample room for mistaken judgments, . . . and protects all but the plainly incompetent or those who knowingly violate the law." <u>Harman v. Pollock</u>, 586 F.3d 1254, 1261 (10th Cir. 2009) (internal quotations omitted).

Here, defendants contend that the plaintiff has failed to allege sufficiently any Eighth Amendment claim against them and that they knew or reasonably should have known that their conduct violated his rights. As found above, however, plaintiff has at this stage of the litigation adequately stated an Eighth Amendment claim so as to withstand defendants' motion to dismiss. Furthermore, there can be little doubt

12

that the right allegedly violated, namely, a prisoner's Eighth Amendment right to be

free from deliberate indifference to a serious medical need, was "clearly established"

such that a reasonable person in defendants' position would have known that his

or her conduct violated that right.  While the factual circumstances in the myriad of

Tenth Circuit case law concerning such Eighth Amendment right may not be

identical to those presented by the plaintiff here, they are sufficiently similar that a

reasonable prison official could very well recognize the contours of his or her

obligations toward the plaintiff in this case.  "[O]fficials can still be on notice that

their conduct violates established law even in novel factual circumstances." Hope

v. Pelzer, 536 U.S. 730, 741 (2002).  "For a constitutional right to be clearly

established, its contours 'must be sufficiently clear that a reasonable official would

understand that what he is doing violates that right. **This is not to say that an

official action is protected by qualified immunity unless the very action in

question has previously been held unlawful, but it is to say that in the light of pre-

existing law the unlawfulness must be apparent.**" Id. at 739 (emphasis added).

Therefore, this court further finds that dismissal of the Amended Prisoner

Complaint is not warranted based on qualified immunity at this time.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the Defendants' Motion to Dismiss (Docket No. 29) be

granted in part and denied in part.  More specifically, it is recommended that any claim

for damages against the defendants in their official capacities and the claim against

defendant Frantz be dismissed.  In all other respects, it is recommended that the motion

13

to dismiss be denied.

   **NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2),**

**the parties have fourteen (14) days after service of this recommendation to serve**

**and file specific written objections to the above recommendation with the District**

**Judge assigned to the case.  A party may respond to another party's objections**

**within fourteen (14) days after being served with a copy.  The District Judge need**

**not consider frivolous, conclusive, or general objections.  A party's failure to file**

**and serve such written, specific objections waives _de novo_ review of the**

**recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53**

**(1985), and also waives appellate review of both factual and legal questions.**

**<u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley</u>**

**<u>v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**


Date:  July 11, 2011                              s/ Michael J. Watanabe
          Denver, Colorado                        Michael J. Watanabe
                                                            United States Magistrate Judge